CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

MAY 10 2012

JULIA C. DUDLEY, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| PAMELA M. RICHARDS, | ) | |
| Plaintiff, | ) | Civil Action No.: 6:11cv17 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | By: Hon. Robert S. Ballou |
| COMMISSIONER OF SOCIAL | ) | United States Magistrate Judge |
| SECURITY, | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Pamela M. Richards ("Richards") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Plaintiff's motion for summary judgment (Dkt # 10), and **GRANTING** the Commissioner's motion for summary judgment (Dkt # 13).

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.

1

2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Richards bears the burden of proving that she is disabled within the meaning of the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. *Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983); *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the

Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

At the time of the hearing before the administrative law judge, ("ALJ"), Richards was forty-one years old, a younger person under regulations and thus, more readily able to adjust to other work than those in older age classifications. (Administrative Record, hereinafter "R." 21, 26, 249.) 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Richards has a GED and has taken college classes. (R. 47-48, 205.) Richards's past relevant work includes an assembler, sedentary unskilled work; pizza delivery driver, light unskilled work; shift supervisor, light and semi-skilled work; gambling cashier, sedentary semi-skilled work. (R. 55, 199-200.) Richards last worked in 2008 for thirty-two to forty hours per week as a "teller" and left this job voluntarily due to "wheezing." (R. 39.)

Richards reported that during the relevant period, she had the capacity to care for her own needs, work around the house, prepare meals, go into public alone, drive, read, watch television, shop, and use the computer. (R. 54, 218-221, 402.) Richards claims that her anxiety prevents her from being "around a lot of people." (R. 26-27.) Nevertheless, Richards continued to have social interactions during the relevant period by having a relationship with a boyfriend, attending her son's baseball games, and bowling. (R. 218-21, 527.)

### Claim History

On January 7, 2008, Richards protectively filed for SSI and DBI claiming that her disability began on January 1, 2008 due to degenerative disease/osteoarthritis of the lumbar spine

3

and knees, obesity, sleep apnea, anxiety disorder, tachycardia, breathing and sinus problems, and stomach pain and gastrointestinal problems. (R. 15-16, 199.) On June 27, 2008, the Commissioner denied Richards's application for benefits and confirmed the decision on reconsideration on December 30, 2008. (R. 113-18, 121-25.) ALJ Joseph T. Scruton held an administrative hearing on April 22, 2010 to consider Richards's disability claim. (R. 31.) Richards was represented by counsel at the hearing, which included testimony from Richards and an independent vocational expert called on behalf of the Commissioner. (R. 29-61.)

The ALJ found that Richards had the following severe impairments: degenerative disease/osteoarthritis of the lumbar spine and knees, obesity, sleep apnea, anxiety disorder, and tachycardia. (R. 15.) None of these impairments, individually or collectively, met or medically equaled any of the agency's listed impairments. (R. 16.) The ALJ determined that Richards had a RFC to perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a). (R.18.) The ALJ recognized, however, that Richards needs to alternate seated positions, stand or walk no more than twenty minutes at a time, and rarely climb stairs or ladders. *Id.* The ALJ did not find that Richards's breathing problems were severe, but noted that she must avoid even moderate exposure to excessive humidity, wetness, and pulmonary irritants. *Id.* Finally, the ALJ determined that Richards's RFC limited her to tasks requiring short, simple instructions and limited her to occasional contact with the public. *Id.* The ALJ determined that Richards could not return to her past work, but that she could perform other work that exists in significant numbers in the national economy. (R. 26-27.) On May 5, 2011, the Appeals Counsel denied Richards's request for review and this appeal followed. (R. 1-3.)

## ANALYSIS

### Treating Physician Opinion

Richards argues that the ALJ failed to give greater weight to the opinion of her treating physician, Dr. Stidham. The court gives the opinions of a treating physician controlling weight when the opinions are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001), 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations....

SSR 96-2p.

Whether to give the treating physician's opinion controlling weight requires the ALJ to consider the evidence in support of the opinion and to determine the opinion's consistency with the whole record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The ALJ considers whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ is required to give specific reasons supported by the record if he gives the treating physician's opinion less than controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

On February 24, 2009, Dr. Stidham completed a Virginia Department of Social Services medical evaluation form to assist Richards's effort to obtain unemployment benefits. (R. 25, 373-74.) Dr. Stidham found that Richards could not work more than twenty hours per week and could lift no more than ten pounds at a time. Generally, determinations made by other agencies

5

do not bind the Social Security Administration in adjudicating disability. 20 C.F.R. §§ 404.1504, 416.904; *see e.g., Yost v. Barnhart*, 79 Fed. App'x 553, 556 (4th Cir. 2003). Here, the checkbox form used for unemployment benefits does not provide Richards's "specific functional deficits in Social Security terms." (R. 25.) The disability opinion on the Virginia Department of Social Services form only states Dr. Stidham's general diagnoses and contains no objective clinical findings to support the opinions. (R. 374.)

The objective medical records and the other evidence of record fail to support Dr. Stidham's opinion that Richards can only work twenty hours per week. Dr. Stidham referenced "anxiety and depression" as the primary medical reason Richards had a limited work capacity. (R. 374.) This conclusion is inconsistent with Dr. Stidham's treatment records, which indicate Richards received only routine and conservative treatment for her mental impairments. (R. 299, 376-81, 386, 436-7, 442, 527, 668-70). Dr. Stidham regularly found that Richards's anxiety and panic attacks were well controlled, and that she received good results with Xanax. (R. 289, 419, 436, 622-24, 638.) Indeed, Richards testified at the April 22, 2012 hearing that her medication works within forty-five minutes to subdue any residual morning panic or anxiety. (R. 52, 436.) Finally, in June 2009, Richards began to see Mollie Guzo, LPC, a therapist, who assessed Richards as functioning at fair-to-good level. (R. 442.) The medical evidence further shows that Richards's mental impairments were controlled with medication.

To the extent that Dr. Stidham based his February 2009 opinion on Richards's musculoskeletal problems, his opinion is inconsistent with other evidence in the record. Dr. Stidham consistently managed Richards's musculoskeletal problems with conservative and routine treatment. On September 22, 2008, Richards complained of neck pain limiting her movement in her left arm, shoulder, and neck. (R. 392-93.) The following day, X-rays revealed

6

no acute fractures or dislocation and only mild disc degeneration at C5-6 and C6-7. (R. 428.)
On October 7, 2008, Richards began physical therapy for her neck pain. (R. 522-24.) Richards missed several appointments because of an ankle sprain sustained while bowling. (R. 402.) Ultimately, the physical therapist discharged Richards noting a full resolution of her symptoms. (R. 402, 520.)

On November 5, 2008, Richards reported a full resolution of her symptoms. (R. 520.) On February 3, 2009, Richards saw Dr. Robert Johnson, M.D., a rheumatologist, who found no evidence of rheumatologic disease and encouraged Richards to stop smoking, consider taking Cymbalta, and exercise. (R. 406-11.)

In light of the foregoing, the court finds substantial evidence in the administrative record supports the ALJ's decision to give Dr. Stidham's February 2009 opinion less weight.

**ALJ's Credibility Assessment**

Richards argues that the ALJ erred in finding her subjective complaints of pain and limitations only partially credible. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Richards's subjective allegations of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Richards has met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of the claimed symptoms and their affect upon Richards's ability to work. *Id.* at 594-95.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The ALJ determined that Richards's testimony concerning the limiting effects of heart problems, physical pain, panic attacks, and anxiety were only partially credible, because Richards received only routine and conservative treatment for her physical impairments, none of her conditions required surgical intervention, and she had only limited psychological counseling for her mental impairments. (R. 24.)

Richards received chest x-rays on June 2, 2007, which showed no acute abnormalities. (R. 351.) On July 11, 2007, Dr. Stidman noted that Richards's tachycardia had "improved" and was well controlled with Atenolol. (R. 289.) Richards rarely sought treatment for complications relating to her tachycardia and often denied chest pain and palpitations. (R. 300, 377, 382, 387, 393, 397, 416, 419-21, 488, 500, 507, 589.)

Dr. Stidham's treatment of Richards's physical impairments has been conservative and routine. Richards has had no orthopedic surgeries. (R. 46.) Richards wears a knee brace, but does not walk with a cane or walking device. (R. 47.) Richards briefly received physical therapy in October 2008 and reported a full resolution of her symptoms upon discharge in November 2008. (R. 520).

Regarding anxiety, Dr. Stidham frequently noted that medication controlled this condition. (R. 289, 419, 436, 622-24, 638.) In May 2009, Dr. Charlotte Hagan recommended Richards take an anti-anxiety medication for her anxiety, but Richards declined to take the

8

medication even after Dr. Hagan explained that the medication would not affect her breathing problems. (R. 436-37.) Additionally, Richards's panic attacks occur in the morning and resolve within forty-five minutes of taking Xanax. (R. 52, 436-37.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ also found that Richards's testimony about her daily activities was inconsistent with her complaints of disabling symptoms and limitations. (R. 25.) Richards is able to pick up after herself, prepare meals, drive, read, watch television, care for her personal needs, shop, use the computer, play online computer games, bowl, help her son with homework, and attend her son's games. (R. 54, 218-221, 402.)

Given the above, Richards's testimony regarding the severity of her symptoms and the extent to which they limit her daily activities is only partially credible. The ALJ considered the extent to which Richards's allegations were consistent with the objective medical evidence, and took the allegations, which he found to be credible, into account in his RFC determination. The court finds that there is substantial evidence in the administrative record to support the ALJ's determination that Richards is only partially credible, and the ALJ's subsequent decision to discount Richards's testimony about the limiting effects of her impairments.

**ALJ's Mental Impairment Assessment**

Richards argues that the ALJ erred by finding that her anxiety only minimally limits her ability to engage in substantial gainful activity. Importantly, Richards controls her anxiety with medication, (R. 289, 419, 436, 622-24, 638.), has maintained social interaction through daily activities including bowling and watching her son's games, (R. 402.), and was involved in a relationship with a boyfriend during the relevant period. (R. 526.) In June 2009, Richards's

therapist, Mollie Guzo, LPC, determined that Richards functioned at a "fair" level despite certain situational stressors in her life. (R. 527.) In March and April 2010, Richards saw Doreen Fick, a social worker, who found that Richards cared for herself and made better relationship decisions. (R. 668.) Overall, the record showed that Richards sought counseling infrequently and that she enjoyed a documented improvement of her condition with medication. (R. 23.) Indeed, Richards's presentation of psychiatric symptoms was inconsistent as she often denied any symptoms at all. (R. 23, 377, 382, 397, 416.)

The ALJ considered the record and the evidence and accounted for the effects of Richards's anxiety by limiting her RFC to work, which requires only short and simple instructions and occasional public contact. (R. 18.) Therefore, the court finds that substantial evidence supports the ALJ's assessment of Richards's mental impairments.

**ALJ's Consideration of Obesity**

Richards argues that the ALJ failed to analyze the functional effects of her obesity at steps four and five as required by SSR 02-1p. The ALJ must consider a claimant's obesity at steps two through five of the sequential disability evaluation. SSR 02-1p; *see also Barr v. Astrue*, 2011 WL 3420844, at *5-*6 (W. D. Va. Aug. 4, 2011) *adopted by* 2011 WL 3847154 (W.D. Va. August. 30, 2011). The regulations do not require the ALJ to consider the claimant's obesity explicitly. Rather, the ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3rd Cir. 2005); *see Martin v. Barnhart*, 2012 WL 663168, at *5-*6 (W.D. Va. Feb. 29, 2012) *report and recommendation adopted sub nom. Martin v. Astrue*, 2012 WL 994903 (W.D. Va. Mar. 23, 2012); *see also Phelps v. Astrue*, 2010 WL 3632730, at *6 -*7 (W.D. Va. Sept. 9, 2010)(finding that an ALJ properly considered

claimant's obesity because he found it severe and relied on opinions of two doctors who examined the claimant and noted her height and weight).

Richards overlooks the ALJ's finding that her obesity was a severe impairment. The ALJ considered the limitations caused by Richards's obesity in determining her RFC. (R. 16 – 17.) During the hearing, the ALJ also explicitly inquired into Richards's height and weight. (R. 17, 28.) The ALJ indicated that he considered Richards's obesity in conjunction with her cardiovascular, respiratory, and arthritic conditions, found that she would have trouble with prolonged standing or walking, and reflected these facts in his RFC finding. (R. 17, 22.) The ALJ relied on the objective medical findings and diagnoses of Drs. Stidham, Johnson, and Crickenberger all of whom were aware of Richards's obesity and noted her condition in their treatment records. (R. 21- 22.)

To challenge an ALJ's obesity analysis, the claimant must also advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. *Matthews v. Astrue*, 2009 WL 497676, at *4, n.4 (W.D. Va. Feb. 27, 2009); *see also Phelps*, 2010 WL 3632730, at *7. The medical record does not show that Richards's obesity caused her any significant limitation in her work activities other than those identified by the ALJ or assigned in her RFC. Obesity alone does "not correlate with any specific degree of functional loss." SSR 02-1p. Richards offers no additional medical evidence that her obesity was disabling or had functional consequences that required the ALJ to conduct a more detailed analysis. Richards's medical history simply does not support her contention that her obesity was disabling or caused any functional limitation not accounted for in her RFC. The court finds that the ALJ directly accounted for the limitations arising from Richards's obesity in his RFC

11

Case 6:11-cv-00017-NKM-RSB   Document 18   Filed 05/10/12   Page 11 of 12   Pageid#: 764

analysis and relied upon medical evidence taking her obesity into account in accordance with SSR 02-1p.

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket. The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: May 10, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge