CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 05 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Pay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

PAMELA M. RICHARDS,
                  *Plaintiff,*

v.

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,
                  *Defendant.*

CASE NO. 6:11–cv–00017

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court upon the parties' cross Motions for Summary Judgment (docket nos. 10 and 13), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 18, hereinafter "R&R"), the Plaintiff's Objections to the R&R (docket no. 19), and the Commissioner's Response thereto (docket no. 20). Pursuant to Standing Order 2011 – 17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. (docket no. 12). The Magistrate Judge filed his R&R, advising this Court to deny the Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed Objections to the R&R, thereby obligating the Court to undertake a *de novo* review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330–31 (4th Cir. 2006).

## I. BACKGROUND

On January 7, 2008, Plaintiff Pamela M. Richards protectively filed an application for Disability Insurance Benefits and an application for Supplemental Security Income payments under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383(d) (hereinafter "the Act"). This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

At the time she filed her applications, Richards was forty-one years old, and claimed that, after January 1, 2008, she became disabled (and thus unable to work) due to degenerative disease/osteoarthritis of the lumbar spine and knees, obesity, sleep apnea, anxiety disorder, tachycardia, breathing and sinus problems, stomach pain, and gastrointestinal complications. (Administrative Record, hereinafter "R." 15–16, 199). Before the onset of her alleged disability, Richards had worked as an assembler (sedentary, unskilled work), a pizza delivery driver (light, unskilled work), and a shift supervisor (light, semi-skilled work). (R. 42–45, 199–200). Richards worked most recently in 2008 for thirty-two hours per week as a cashier at a horse-racing track; she left this job voluntarily because of "wheezing." (R. 39). She has received her GED and has taken some college-level courses. (R. 46–47).

### A. The ALJ Decision

The Commissioner denied Richards's application for benefits on June 27, 2008, and on reconsideration, confirmed the decision on December 30, 2008. (R. 113–18, 121–25). Richards subsequently filed a request for a hearing before an Administrative Law Judge ("ALJ") to challenge the Commissioner's determination. (R. 29). On April 22, 2010, ALJ Joseph T. Scruton held an administrative hearing to consider the merits of Richards's disability claim. *Id.* At the hearing, Richards was represented by counsel, and an independent vocational expert provided testimony in

support of the Commissioner. (R. 29–30). In his decision rendered June 14, 2010, the ALJ concluded that Richards was not "disabled" under the Act. (R. 27).

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). In this process, the Commissioner asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) the claimant is able to perform her past relevant work; and (5) the claimant can perform other specific types of work. *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).

The ALJ found that the first step of this inquiry was satisfied, as Richards had not engaged in substantial gainful activity since the onset of her alleged disability. (R. 15). At the second step, the ALJ determined that Richards had the following severe impairments: degenerative disease/osteoarthritis of the lumbar spine and knees, obesity, sleep apnea, anxiety disorder, and tachycardia. *Id.* At the third step, the ALJ determined that none of these conditions, individually or in combination, equaled or exceeded the severity of one of the listed impairments in any of section 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 16).

Steps four and five of the inquiry required the ALJ to assess Richards's residual functional capacity ("RFC").[1] Articulating the reasons for her disability claim, Richards alleged that she suffered impairments in the form of anxiety, tachycardia, breathing and sinus problems, sleep disorder, gastrointestinal complications, and pain in her right hip, knees, both feet, neck, and lower

---

[1] Residual functional capacity is defined as the most that the claimant can do in a work setting, despite the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations" affecting the
[*Footnote continued on next page*]

back. (R. 15–21). The ALJ found Richards's allegations respecting her anxiety disorder and other mental limitations only partially credible. (R. 23). While Richards had a fourteen-year history of anxiety and panic attacks, she infrequently sought counseling, and medical evidence revealed that her anxiety was well-controlled by Xanax. (R. 22–24, 287, 378, 383, 437, 638). With respect to her tachycardia, the ALJ also found Richards's claims only partially credible. (R. 20). The ALJ noted that, although medical evidence documented the existence of tachycardia, Richards rarely sought treatment for heart complications, and she regularly denied having chest pain or palpitations; moreover, evidence revealed that she was able to control her tachycardia through medication. (R. 20, 287, 289, 332, 345, 377, 382, 387). The ALJ determined that Richards's allegations of sleep apnea were partially credible, but that her difficulty sleeping did not severely limit her work functions. (R. 24). The ALJ recognized that Richards had regular episodes of sinusitis and bronchitis; however, Richards did not suffer from chronic obstructive pulmonary disease, and her transient infections responded well to conservative treatment, (R. 16, 286, 291–92, 396–98, 456–57, 476, 488–91, 593), so Richards's sinus problems therefore did not constitute impairment under the Act, (R. 16). With respect to Richards's gastrointestinal issues, the ALJ noted that even though Richards suffers from mild diverticulitis and occasional flare-ups of stomach pain, medical evidence showed no remarkable abnormalities that could represent a severe impairment. *Id.* Finally, with respect to musculoskeletal pain, the ALJ found that Richards's allegations were not fully credible. (R. 22). The ALJ based this determination on evidence indicating that during her many doctors' visits, Richards routinely denied back pain, joint pain, or swelling. (R. 20, 287, 300, 377, 466, 663). Repeated physical examinations often revealed normal gait and station, with no gross spinal, extremity, or joint abnormalities, no tenderness, and a full range of motion. (R. 20). Moreover,

---

claimant's performance. 20 C.F.R. § 404.1545(a)(1).

while Richards used a knee brace, she reported no current use of physical therapy, ointments, chiropractic care, or any other measures for pain relief, nor did she possess any observable manifestations of severe chronic pain, such as muscular atrophy or neurological dysfunction. (R. 24).

In light of these findings, the ALJ determined that Richards possessed the RFC to perform a limited range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (R. 16). Under this classification, Richards requires alternating seated positions, can walk or stand no more than twenty minutes at a time, can rarely climb, and can never kneel, crouch, or crawl. *Id.* The ALJ did not find that Richards's breathing problems were severe, but indicated that she must avoid even moderate exposure to excessive humidity, wetness, and pulmonary irritants. *Id.* Finally, the ALJ determined that Richards's RFC limited her to tasks requiring short, simple instructions, having no more than occasional contact with the public. *Id.*

Applying this RFC to steps four and five of the disability inquiry, the ALJ determined that Richards could not return to her past work, but that because of her age, education, and work experience, she could perform other jobs that exist in significant numbers in the national economy. (R. 25–26). In doing so, the ALJ partially rejected the opinion of Richards's treating physician, Dr. Gregory Stidham, who indicated that Richards could work only twenty total hours per week, and lift no more than ten pounds. (R. 25, 374). While Richards's RFC incorporated the ten-pound limitation, the ALJ stated that Dr. Stidham's treatment records—showing routine and conservative treatment—were inconsistent with a finding that Richards is capable of only twenty hours of work per week. (R. 25). In concluding his opinion, the ALJ held that Richards had not been under a disability as defined by the Act. (R. 27). Richards sought review of the ALJ's decision, but the Appeals Council denied that request on May 5, 2011. (R. 1–3).

## B. Summary Judgment Motions

On June 15, 2011, Richards initiated the instant action seeking review of the final decision of the Commissioner, and on November 28, 2011, the Court referred this matter to the United States Magistrate Judge for his R&R. In support of her Motion for Summary Judgment, Richards first argues that the ALJ failed to give greater weight to a medical evaluation form in which her primary physician, Dr. Stidham, opined that she was only able to engage in part-time work for a maximum of twenty hours per week. (R. 374). On this point, Richards claims that the ALJ improperly discounted Dr. Stidham's opinion. Pl.'s Mem. in Support of Mot. for Summ. J. 10. Second, Richards argues that the ALJ improperly evaluated her complaints of pain, and improperly assessed her credibility. *Id.* at 11–12. Third, Richards claims that the ALJ incorrectly evaluated her mental impairments by finding that her anxiety disorder imposed only minimal limitations on her working ability. *Id.* at 13. Finally, Richards argues that the ALJ failed to properly consider the effects of her obesity in assessing her RFC. *Id.* at 14. According to Richards, "the ALJ was required . . . to evaluate the impact of the plaintiff's obesity on her musculoskeletal impairments and tachycardia . . . [,] and failed to do so in his decision." *Id.* at 16.

On May 10, 2012, the Magistrate Judge issued his R&R, rejecting all of Richards's arguments in support of her Motion for Summary Judgment. The Magistrate Judge recommended that the Commissioner's Motion for Summary Judgment be granted, on the grounds that the ALJ properly weighed Dr. Stidham's opinion about Richards's work limitations, and that the ALJ's conclusions about Richards's mental limitations and credibility were supported by substantial evidence. R&R 5–10. The Magistrate further opined that the ALJ correctly evaluated Richards's obesity and its functional effects when determining her RFC. *Id.* at 10–11.

Richards timely filed Objections to the R&R on May 24, 2012, arguing that the Magistrate Judge improperly applied SSR 02–1p in assessing the ALJ's evaluation of obesity. Pl.'s Objections 1–5. Richards contends that SSR 02–1p required the ALJ to expressly analyze the effect of obesity on every alleged impairment, and that it remains unclear whether the ALJ "truly analyzed the cumulative effect of the plaintiff's obesity and her other impairments on her residual functional capacity." *Id.* at 3. Richards further contends that the ALJ lacked substantial evidence to conclude that Richards's complaints of disabling pain are not fully credible, that her anxiety imposes only minimal limitations, or that Dr. Stidham's work-restriction opinion should be disregarded. *Id.* at 5–7. The Commissioner, responding to the Objections, simply argues that they "repeat [Richards's] prior arguments, none of which warrants remand." Resp. 1.

## II. Standard of Review

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 555 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589. "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). Therefore, the issue before this Court is not whether Richards is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and was reached through correct application of the law. *Craig*, 76 F.3d at 589.

### III. DISCUSSION

### A. ALJ's Consideration of Treating Physician's Opinion

Richards argues that the Magistrate Judge erred in concluding that the ALJ had substantial evidence to give less weight to Dr. Stidham's opinion that she could work "no more than twenty hours per week." (R. 25, 373–74). Courts give controlling weight to the medical opinions[2] of a treating physician, so long as they are supported by medically acceptable clinical and laboratory diagnostic techniques, and so long as they are not inconsistent with other substantial evidence in the case record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (applying 20 C.F.R. § 416.927). Before declaring an opinion controlling, however, a court must examine the evidence supporting the particular opinion, and determine whether it is consistent with other opinions in the record. 20

---

[2] "Medical opinions are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight." SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996).

-8-

C.F.R. § 404.1527(d)(2); SSR 96–2p, 1996 WL 374188, at *1 (July 2, 1996). The reviewing court should consider whether the physician has examined the claimant, the existence of an ongoing doctor-patient relationship, whether the physician is a specialist, and the opinion's consistency with the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

On February 24, 2009, Dr. Stidham completed a Virginia Department of Social Services medical evaluation form to assess whether Richards was entitled to unemployment benefits. (R. 25, 373–74). On that form, Dr. Stidham indicated that Richards could lift no more than ten pounds in a work environment, and could engage in no more than twenty hours of work per week. (R. 374). Dr. Stidham cited "anxiety/depression" and "osteoarthritis" as the primary and secondary bases, respectively, for these limitations. *Id.* The evaluation form only states Dr. Stidham's general diagnoses, and contains no diagnostic test results or objective medical findings to support the opinion. *Id.* The ALJ found that this opinion was not directly substantiated, and therefore afforded it less weight in his decision. (R. 25). Indeed, according to SSR 96–2p, an "adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion." 1996 WL 374188, at *2.

Dr. Stidham's other medical opinions fail to support the limitations expressed on the Virginia Department of Social Services evaluation form.[3] Dr. Stidham indicated that "anxiety" and "depression" represented the primary medical reasons for Richards's limited work capacity. (R. 374). This conclusion appears to be inconsistent with Dr. Stidham's records, which indicate only

---

[3] "It is not unusual for a treating source to provide medical opinions about several issues . . . . [A]djudicators must always be aware that one or more of the opinions may be controlling while others may not." SSR 96–2p, 1996 WL [*Footnote continued on next page*]

Case 6:11-cv-00017-NKM-RSB Document 21 Filed 07/05/12 Page 9 of 18 Pageid#: 785

routine and conservative treatment for anxiety and other mental impairments. (R. 299, 376–81, 436–37, 442, 527, 622, 668–70). Dr. Stidham repeatedly found that Richards's anxiety and panic attacks were under control, and that they responded affirmatively to medication. (R. 289, 419, 436, 622–24, 638). Indeed, only one day after Dr. Stidham completed the disability form, he indicated that Richards's panic attacks seemed "fairly stable" under medication, with no sign of mood, thought, or memory difficulties. (R. 622–24). Similarly, Richards testified at the April 22, 2010 hearing that her medication works within forty-five minutes to alleviate morning stress and anxiety. (R. 52, 436).

Dr. Stidham listed Richards's osteoarthritis as a secondary cause of her disability. (R. 374). To the extent that Dr. Stidham based his opinions on Richards's musculoskeletal problems, this opinion is inconsistent with the other evidence in the record. During the relevant period, Dr. Stidham's treatment of Richards's physical impairments was conservative and routine. Generally, Richards's musculoskeletal examinations prior to Stidham's February 2009 opinion yielded normal findings relative to her gait and station, swelling, and range of motion. (R. 293, 296, 301, 377, 386, 388, 402, 410). On September 22, 2008, Richards complained of neck pain limiting movement in her left arm, shoulder, and neck. (R. 392–93). X-rays revealed mild disc degeneration (R. 428), and on October 7, 2008, Richards began physical therapy to address her pain issues, (R. 522–24). Richards began therapy late, having missed several appointments due to an ankle sprain she sustained while bowling. (R. 402). Only one week after beginning therapy, she cancelled her remaining appointments, reporting full resolution of her symptoms. (R. 520).

On February 3, 2009, Richards visited Dr. Robert Johnson, a rheumatologist. (R. 407). Dr. Johnson found no evidence of rheumatologic disease, but he did diagnose Richards with chronic lower back pain and a possible sacroiliac joint dysfunction. *Id.* Nevertheless, Dr. Johnson only

---

374188, at *2.

recommended that Richards quit smoking, exercise, and also consider a sleep study, physical therapy, and anti-anxiety medication. *Id.*

In light of the foregoing, I agree with the Magistrate Judge that the ALJ properly weighed the evidence relating to Dr. Stidham's medical opinions. It is the province of the ALJ to resolve conflicts in the evidence, *Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993); in doing so, the ALJ must articulate his reasons for crediting one piece of evidence over another, *see e.g.*, *Smith v. Schweiker*, 671 F.2d 789, 793 (3d Cir. 1982) (noting that "the ALJ may not ignore conflicting evidence; he must instead explain his reasons for rejecting it."). In the present case, the ALJ sufficiently articulated why he decided to give Dr. Stidham's opinion on the Virginia Department of Social Services form "only some weight." (R. 25). The record contains substantial evidence to suggest that Dr. Stidham's February 2009 opinion deserved less than controlling force.

### B. ALJ's Consideration of Obesity

In her Objections, Richards principally argues that the Magistrate Judge incorrectly assessed the requirements for evaluating obesity under SSR 02–1p. Pl.'s Objections 1. According to Richards, SSR 02–1p demands that the ALJ expressly consider the effect of the plaintiff's obesity, and therefore requires the ALJ to engage in "discussion regarding the potential impact of obesity on the claimant's other impairments." *Id.* at 1–3. However, there is no language in SSR 02–1p that directs the ALJ to include a lengthy analysis, or indeed, any precise analysis regarding obesity when issuing an opinion. It only mandates that the ALJ consider the effect of obesity during steps two through five of the five-step inquiry. SSR 02–1p, 2000 WL 628049, at *3–7 (Sept. 12, 2002); *see also Barr v. Astrue*, 2011 WL 3420844, at *6 (W.D. Va. Aug. 4, 2011) (finding that the plaintiff's high BMI did not obligate the ALJ to include a more detailed analysis in the RFC determination), *adopted by* 2011 WL 3847154 (W.D. Va. Aug. 30, 2011). Accordingly, the ALJ in this case

addressed obesity at steps two (R. 15), three (R. 17), four (R. 18), and five (R. 26) of his five-step analysis.

Additionally, Richards overlooks the fact that the ALJ's decision *does* expressly consider her obesity, and factors it in extensively when listing her severe impairments and establishing her RFC. (R. 16, 17, 20–22, 26). The ALJ listed Richards's obesity as a severe impairment. (R. 15). The ALJ also listed sleep apnea as a severe impairment, even though Richards had never been formally diagnosed with the condition.[4] (R. 15, 34–35). The ALJ also described the requirements of SSR 02–1p in detail, and listed Richards's BMI as a positive indicator of her obesity. (R. 17). The ALJ explained how Richards's obesity could adversely affect her breathing, and expressly discussed obesity in conjunction with her other cardiovascular, arthritic, and respiratory conditions. (R. 16–17). Finally, the ALJ relied on the objective medical findings of Drs. Crickenberger, Johnson, and Stidham, all of whom knew of Richards's obesity and noted it in their records. (R. 21–22); *see Phelps v. Astrue*, 2010 WL 3632730, at *6–7 (W.D. Va. Sept. 9, 2010) (finding that and ALJ properly considered claimant's obesity, having found it severe by relying on opinions of two doctors who noted her height and weight).

Because of Richards's obesity, the ALJ determined that she would have difficulty with prolonged walking or standing, and reflected this in the RFC determination. (R. 22). Moreover, the ALJ's RFC finding prohibits Richards from climbing, kneeling, crouching, crawling, and standing on unprotected heights; it also states that Richards must avoid even moderate exposure to excessive humidity, wetness, and extreme temperatures. (R. 18). In her Objections, Richards argues that these

---

[4] According to SSR 02–1p, "the effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day." 2000 WL 628049, at *6 (Sept. 12, 2002). It seems likely that given Richards's obesity, the ALJ was willing to grant the undiagnosed condition in accordance with SSR 02–1p.

Case 6:11-cv-00017-NKM-RSB   Document 21   Filed 07/05/12   Page 12 of 18   Pageid#: 788

limitations are consistent with her other impairments, and do not account for obesity. Pl.'s Objections 3. Yet Richards's RFC closely tracks the language in SSR 02–1p that lists the work limitations potentially caused by obesity,[5] thereby undermining her claims that the ALJ ignored obesity in his findings. SSR 02–1p, 2000 WL 628049, at *6.

To challenge an ALJ's obesity findings, the claimant must provide medical evidence establishing functional limitations that the ALJ failed to account for when making his RFC determination. *Matthews v. Astrue*, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009). In support of her challenge, Richards claims that her chronic lower back pain, in conjunction with her obesity, forces her to lie down for two hours each day. Pl.'s Objections 3. However, no medical evidence in the record substantiates this contention. Richards focuses on the report issued by her rheumatologist, Dr. Johnson, which noted that her chronic lower back pain was aggravated by her obesity. (R. 407). Yet in the same report, Dr. Johnson recommended that Richards exercise and seek physical therapy—not lie down—to alleviate her condition. *Id.* Regardless, the ALJ's decision expressly discusses Dr. Johnson's report, and there is nothing to suggest that the ALJ did not incorporate it in his RFC determination. (R. 21–22).

Richards correctly points out that a total failure to examine obesity in a disability hearing constitutes reversible error. *See Davis v. Astrue*, 2010 WL 424144, at *5–6 (W.D. Va. Feb. 3, 2010). No such failure exists in the present case. Indeed, the ALJ considered obesity in steps two through five of the five-step inquiry, listed it as a severe impairment, discussed it extensively in his decision, and incorporated obesity-related limitations when establishing Richards's RFC. (R. 16–18, 20–22, 25–26). There is simply no medical evidence in this record suggesting that Richards's obesity was

---

[5] "Obesity can cause limitation of function." SSR 02–1p, 2000 WL 628049, at *6. Indeed, it can "affect ability to do postural functions, such as climbing, balance, stooping, and crouching." *Id.* Obesity can also affect "the ability to [*Footnote continued on next page*]

disabling, or that it resulted in functional limitations that would require the ALJ to engage in a more detailed evaluation. I therefore find that the ALJ relied upon substantial evidence regarding Richards's obesity, and properly considered that evidence in accordance with SSR 02–1p.

### C. The ALJ's Credibility Assessment

Richards next argues that the Magistrate Judge erred in finding her claims of disabling pain only partially credible. Richards alleges that her impairments caused a level of pain that barred her from substantial gainful activity. The Magistrate Judge, however, agreed with the ALJ, who found that the evidence failed to set forth any "significant medical findings" that "would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis." (R. 24). It is the ALJ's function to determine the facts and resolve inconsistencies between a claimant's alleged impairments and her ability to function. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). In assessing the evidence, the ALJ must give Richards's subjective claims due consideration, "because pain is not readily susceptible of objective proof." *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). However, "allegations of pain and other subjective symptoms, without more, are insufficient." *Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996). Therefore, the ALJ must examine all the objective medical evidence to determine whether or not the claimant's underlying impairments can reasonably be expected to produce the subjective symptoms described. *Id.* at 593–94.

The ALJ found that Richards has severe impairments in the form of degenerative disease/osteoarthritis of the lumbar spine and knees, obesity, sleep apnea, anxiety disorder, and tachycardia. (R. 15). Yet the ALJ also determined that Richards's testimony concerning the

---

tolerate extreme heat, humidity, or hazards." *Id.*

Case 6:11-cv-00017-NKM-RSB   Document 21   Filed 07/05/12   Page 14 of 18   Pageid#: 790

limiting effects of these conditions was only partially credible, because she received no more than routine and conservative treatment for her physical conditions, her panic attacks were well-controlled through medication, she had only infrequent counseling sessions, and none of her physical conditions required surgical intervention. (R. 24).

Regarding her tachycardia, Richards received chest x-rays on June 27, 2007, which showed no acute abnormalities. (R. 351). On July 11, 2007, Dr. Stidham wrote that her palpitations were "well controlled on Atenolol." (R. 289). Richards rarely sought treatment for heart complications, and regularly denied having chest pain or palpitations. (R. 300, 377, 382, 387, 393, 397, 416, 419–21, 488, 500, 507, 509). Where Richards's other physical impairments are concerned, none require surgical intervention. (R. 46). In January, 2009, an orthopedic examination revealed a full range of motion, full strength, and no fractures or deformities. (R. 402). Although Richards often wears a knee brace, she does not require a cane or assistive device to move around. (R. 47). And although her rheumatologist diagnosed her with chronic lower back pain, he recommended exercise and physical therapy to ameliorate the long-term issues. (R. 407).

With regard to Richards's anxiety and other mental limitations, Dr. Stidham often noted that medication controlled her condition. (R. 289, 419, 436, 622–24). It seems that Richards could have further relieved her anxiety disorder; however, she refused to take the anti-anxiety medication prescribed by her psychiatrist, Dr. Charlotte Hagan, despite assurances that it would not have adverse side effects. (R. 436–37). Even so, Richards testified that her panic attacks subside within forty-five minutes of taking Xanax, and frequently denied having psychiatric symptoms. (R. 23, 52, 436–37).

In evaluating the intensity and extent of pain, the ALJ must consider the medication and treatment a claimant receives to remedy her symptoms. 20 C.F.R. § 416.929(c)(3)(iv)–(vi). The

- 15 -

Case 6:11-cv-00017-NKM-RSB   Document 21   Filed 07/05/12   Page 15 of 18   Pageid#: 791

ALJ noted that, despite her claims of disabling pain, Richards reported no current use of physical therapy, biofeedback, acupuncture, massage therapy, ointments, herbal remedies, or anything medically related to pain relief. (R. 24). Moreover, Richards exhibited no physical manifestations of pain, such as muscular atrophy, prolonged bed rest, or neurological dysfunction. *Id.* "An unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994). While it is true that a claimant's failure to receive medical treatment that she cannot afford will not support an inference that the condition was not as serious as alleged, *id.*, there is no evidence in the record to suggest that Richards was unable to obtain desired medical services. Instead, it appears that Richards simply did not take medically significant steps to alleviate her pain. Indeed, she withdrew from physical therapy after only one week, citing full resolution of her symptoms. (R. 520). In her Objections, Richards argues that her chronic lower back pain forces her to lie down for two hours each day. Pl.'s Objections 3. However, Dr. Johnson, who diagnosed Richards's pain, recommended she engage in more (not less) physical activity to alleviate that condition. (R. 407).

Considering the record, I agree with the Magistrate Judge's finding that the ALJ had substantial evidence to support a finding of partial credibility with respect to Richards's allegations of disabling pain. The ALJ properly identified those claims that were substantiated by medical evidence and incorporated them in his RFC determination, which severely limits the amount of physical movement Richards must accomplish in a work setting. (R.18, 22). Indeed, the ALJ found that "the claimant's pain would cause difficulty with very prolonged standing or walking, and this limitation is reflected in the . . . residual functional capacity." (R. 22).

## D. The ALJ's Mental Impairment Assessment

Finally, Richards argues the Magistrate Judge erred by concluding that the ALJ had substantial evidence to find that her anxiety imposes only minimal limitations. The ALJ did determine that Richards's anxiety disorder constituted a severe impairment, but did not find it disabling under the Act. (R. 16–17, 22–24). Supporting the ALJ's decision, the record shows that Richards rarely sought counseling or psychiatric services for her condition, and often denied having psychiatric symptoms during medical visits. (R. 23, 377, 382, 397, 416). In June of 2009, Richards's psychotherapist, Mollie Guzo, LPC, found that Richards operated at a "fair" to "good" level, and showed no signs of crisis or regression, despite having a variety of situational stressors. (R. 527). Richards began seeing Dorene Fick, a social worker, for counseling in March, 2010. (R. 668). When Richards concluded her sessions the following month, Ms. Fick noted that Richards remained committed to taking care of herself and making better relationship decisions. (R. 23, 668–70).

Medical records demonstrate that Richards has been able to control her anxiety through medication. (R. 289, 419, 436, 622–24, 638). Indeed, during the April 22, 2010 hearing, Richards stated that Xanax alleviated morning stress and anxiety within forty-five minutes of consumption. (R. 52, 436). Importantly, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). To the extent that Richards's anxiety renders her unable to engage in normal daily activities, she is still able to prepare meals, drive, care for personal needs, shop, use the computer, read, and watch television. (R. 53–55, 218–21). During the relevant period, she also attended her son's sporting events, bowled, and was involved in a relationship with a boyfriend. (R. 221, 402, 526).

When limiting Richards's RFC to work requiring "no more than short, simple tasks" and having "no more than occasional contact with the public," the ALJ considered all of the above evidence and factored in Richards's mental impairments. (R. 18). Having examined the record, I agree with the Magistrate Judge's conclusion that the ALJ had substantial evidence to support his assessment of Richards's mental limitations.

## IV. Conclusion

After undertaking a *de novo* review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's determination. Accordingly, I will enter an Order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing this action and striking it from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this 5th day of July, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE